Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, September 29, 2014 8:46:41 AM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                                    )
                                          )
STEPHEN GREGORY CAPELLI, JR.,             )        Case No. 13-1433
                                          )
            Debtor.                       )        Chapter 7
_____           )

## MEMORANDUM OPINION

Sara Capelli, a creditor, objects to Stephen Capelli (the "Debtor") claiming as exempt property listed in 11 U.S.C. § 522(d) on the basis that he cannot claim such property as exempt because he owns certain property with her as a tenancy by the entirety, which is exemptible under 11 U.S.C. § 522(b)(3)(B). In her view, the Debtor's purported ability to claim as exempt property listed in § 522(b)(3)(B) precludes him from exempting property listed in § 522(d).

For the reasons stated herein, the court will overrule Ms. Capelli's Objection to Exemptions ("Objection").[1]

---

[1] In addition to her Objection to Exemptions, Ms. Capelli, as a dependent of the Debtor on the petition date, also filed an Amended Schedule C based upon her purported ability to do so under 11 U.S.C. § 522(l). In that regard, she asserts that if the court sustains her Objection, the Debtor's claimed exemptions are void, which she equates to the Debtor's failure to file a list of property claimed as exempt. She thus asserts, based upon her interpretation of § 522(l), that the Schedule C she filed on the Debtor's behalf becomes effective. Both the Debtor and Thomas Fluharty, the Chapter 7 trustee administering this case, filed pleadings objecting to Ms. Capelli's Amended Schedule C. By order dated February 18, 2014, the court held in abeyance Mr. Fluharty's Motion to Strike Exemption Schedules Filed By Sara M. Capelli ("Motion to Strike") pending resolution of Ms. Capelli's Objection. Because the court will overrule Ms. Capelli's objection, it need not reach the merits of either the Debtor's objection to her Amended Schedule C or Mr. Fluharty's Motion to Strike; the court will deny both as moot.

## I. BACKGROUND

On December 4, 2013, the Debtor filed his voluntary Chapter 7 bankruptcy petition in this court. During the 730-day period before the petition date, the Debtor lived in both Virginia and West Virginia. For the 180-day period preceding the 730-day period prepetition, the Debtor lived in Virginia.

On Schedule C filed with his petition, the Debtor claims his interest in certain property, including the value of his interest in his former residence and a timeshare that are both located in Virginia, as exempt under § 522(d). The Debtor did not claim any exemptions under Virginia law.

## II. DISCUSSION

Ms. Capelli objects to the Debtor's claimed exemptions based upon her belief that the Debtor cannot claim as exempt property listed in § 522(d) given his ability to exempt property that he holds with her as a tenancy by the entireties. The Debtor argues that although he holds such property with Ms. Capelli, he may claim as exempt property listed in § 522(d) because he cannot claim exemptions under Virginia law such that the concluding sentence of § 522(b)(3) permits his claimed exemptions.[2]

When a debtor files for relief under Chapter 7 of the Bankruptcy Code, a bankruptcy estate is created and comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property of the estate is subject to the control of a Chapter 7 trustee, who is responsible for liquidating such property for the benefit of the debtor's creditors. 11 U.S.C. § 704(a). A debtor may, however, "exempt from property of

---

[2] An issue ancillary to the dispute as framed by the parties is whether federal law preempts any state law restricting the application of § 522(b)(3)(A) to residents thereof, effectively denying a nonresident debtor access to that state's exemption regime. *See In re Fernandez*, No. EP-11-CV-123-KC, 2011 WL 3423373 (W.D. Tex. Aug. 5, 2011) (collecting cases). Although the Debtor obliquely mentioned the potential application of preemption in his Objection to Ms. Capelli's Objection to Exemptions, the issue never acquired traction and was not briefed or substantively addressed by either party. Because the parties did not directly address the issue, the court will likewise not address it but will dispose of Ms. Capelli's objection based only upon the issue as framed and argued by the parties.

2

the estate property listed in either [§ 522(b)(2)] or, in the alternative, [§ 522(b)(3)]." 11 U.S.C. § 522(b)(1).

Allowing debtors to exempt property from the reach of creditors balances two competing purposes of bankruptcy, the first of which "is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (citing *Grogan v. Garner*, 498 U.S. 286 (1991)); *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 192 (1902) ("The determination of the status of the honest and unfortunate debtor by his liberation from encumbrance on future exertion is matter of public concern . . . ."). The second purpose is for creditors to benefit from a meaningful opportunity to collect on outstanding debts and to "secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period . . . ." *Katchen v. Landy*, 382 U.S. 323, 328 (1996). A debtor's exemptions "must be construed in favor of the debtor and the exemption," *In re Ngyuen*, 211 F.3d 105, 110 (4th Cir. 2000) (citations omitted), and the party objecting thereto has the burden of proving the exemptions are not properly claimed. Fed. R. Bankr. P. 4003(c). Debtors ostensibly are free to claim exemptions under § 522(b)(2) or § 522(b)(3). But states can "opt out" of the exemptions provided by §522(b)(2), effectively limiting a debtor's claimed exemptions to property listed in § 522(b)(3). 11 U.S.C. § 522(b)(2).

In adjudging whether a debtor has a choice of exemptions given the strictures of § 522(b)(2), a debtor must first determine his or her domicile under § 522(b)(3)(A). To determine the debtor's domicile for exemption purposes, the debtor must look to:

> [T]he place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;

11 U.S.C. § 522(b)(3)(A). If the debtor cannot claim exemptions under § 522(b)(2) because his domicile, as determined by § 522(b)(3)(A), opted out of that exemption scheme, the debtor may claim as exempt the following property:

3

> (A) [A]ny property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable . . . ;
>
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety . . . to the extent that such interest . . . is exempt from process under applicable nonbankruptcy law; and
>
> (C) retirement funds . . . .

11 U.S.C. § 522(b)(3). Notably, a debtor's residence on the petition date may be located in a different state than his or her domicile as determined by § 522(b)(3)(A) because that provision looks back in time for its determination. If, by operation of § 522(b)(3)(A), a non-resident debtor is artificially domiciled in an opt-out state that limits the availability of its exemption scheme to residents, the debtor may generally claim as exempt property listed in § 522(d) by virtue of the concluding sentence of § 522(b)(3), which states that "[i]f the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)." 11 U.S.C. § 522(b)(3).

Virginia has opted out of the exemptions provided by § 522(b)(2), Va. Code Ann. § 34-3.1, and debtors domiciled therein are generally unable to claim them. *See Id.* (providing that, except as otherwise provided therein, no "individual" may exempt property specified in §522(d)). Notably, however, Virginia exemptions also contain a residency restriction such that it limits the availability of its exemptions to residents only. Va. Code Ann. § 34-24 ("[W]hen any person removes from this Commonwealth, his right to claim or hold any estate as exempt under the provisions of this chapter, shall cease."). In the absence of an available exemption under § 522(b)(3)(B), and given Virginia's residency restriction limiting the availability of its exemptions to residents, courts have construed the concluding sentence of § 522(b)(3) to permit a non-resident debtor domiciled in Virginia to exempt from property of the estate property listed in § 522(d) because a debtor would not otherwise generally be able to exempt property sufficient to accomplish a fresh start. *See In re Hawkins*, 15 B.R. 618 (Bankr. E.D. Va. 1981) (holding that a nonresident debtor is ineligible to claim the Virginia exemptions); *Zebley v. Karavias (In re*

4

*Karavias)*, 438 B.R. 86 (Bankr. W.D. Pa. 2010) (holding that a debtor who filed for bankruptcy relief in Pennsylvania but was domiciled in Virginia could exempt property listed in § 522(d) because he, as a nonresident of Virginia, could not claim property as exempt under § 522(b)(3)(A)).[3] However, the courts, including this one, have not addressed whether a debtor domiciled in Virginia may exempt property listed in § 522(d) if the debtor has an exemptible interest in property listed in § 522(b)(3)(B).

In the case at hand, the parties agree that the Debtor is domiciled in Virginia for purposes of § 522(b)(3)(A), is ineligible to claim West Virginia exemptions, and cannot claim exemptions in property under the Virginia exemptions statute.[4] The parties also agree that the Debtor has an exemptible interest in real property, which he holds as a tenancy by the entirety with Ms. Capelli, located in Virginia. Thus the issue to be decided by the court is whether the Debtor, who is unable to claim exemptions under Virginia law but can claim as exempt his interest in property he owns with Ms. Capelli as a tenancy by the entirety, is "ineligible for any exemption" as contemplated by the concluding sentence of § 522(b)(3). The parties primarily disagree about the meaning of the word "any" as used by Congress in that phrase. The parties' contentions suggest that the phrase "ineligible for any exemption" can be interpreted in one of two ways based upon the meaning of "any" used therein. The Debtor asserts that "any" in the concluding

---

[3] Similarly, this court previously recognized that a West Virginia debtor domiciled in Georgia under §522(b)(3)(A) for exemption purposes was not precluded from claiming as exempt property listed in § 522(d) because Georgia's opt-out statute did not apply to her because it applied only to debtors who resided in Georgia for 180 days prepetition or for a longer portion of such 180-day period than in any other place. *In re Chandler*, 362 B.R. 723, 726 (Bankr. N.D.W. Va. 2007).

[4] Upon a review of the Debtor's Schedules, the Debtor is eligible for an exemption in a life insurance policy under Va. Code Ann. § 38-3122, 3123, which appears outside Title 34 of the Virginia Code, which provides a list of state law exemptions. The ability to claim a life insurance policy as exempt, however, does not preclude the Debtor from claiming as exempt property listed in § 522(d) because "a nonresident of Virginia is not entitled to take any of the other exemptions in property that are afforded by Virginia law." *Karavias*, 438 B.R. at 88. Thus, the practical effect of Virginia exemptions law is to leave nonresident debtors domiciled in Virginia without any available exemptions under Virginia law.

sentence of § 522(b)(3) means "any one" such that he can claim as exempt property listed in § 522(d) if he is "ineligible for [any one] exemption" under § 522(b)(3)(A).  Ms. Capelli interprets "any" in that same phrase to mean "any and every" or "all" such that the Debtor can only claim as exempt property listed in § 522(d) if he is "ineligible for [any and every] exemption" under § 522(b)(3), including an interest held as a tenancy by the entirety authorized under § 522(b)(3)(B) and retirement accounts authorized under § 522(b)(3)(C).

As previously noted, the issue presented by this case appears to be one of first impression, and requires the court to interpret the statute.  In doing so, the court starts with the language of the statute itself.  *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (citation omitted) ("It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'"); *U.S. v. Ron Pair Enters., Inc.*, 498 U.S. 235, 241 (1989) (citations omitted) ("The plain meaning of legislation should be conclusive, except in the 'rare cares [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'").  But where a statute's plain meaning is not readily discernable, then it "must be read in context since a phrase gathers meaning from the words around it." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004); *Johnston v. Valley Credit Servs. (In re Johnston)*, Adv. No. 06-180, 2007 Bankr. LEXIS 1174, at *23 (Bankr. N.D.W. Va. Apr. 12, 2007) (citations omitted) (referencing "well-established rules of statutory construction that statutes should be read in harmony and that all words of a statute should be given effect").

As pointed out by the parties, the meaning of the phrase "ineligible for any exemption" turns upon the meaning of the word "any."  The dictionary definition of that word includes "one, some or all."  Merriam-Webster's Collegiate Dictionary 53 (10th ed. 1998).  The court thus finds that "ineligible for any exemption," and by extension the entire concluding sentence of § 522(b)(3), lack plain meaning, even when considered within the context of the rest of § 522(b)(3).  The court observes, however, the following two characteristics of § 522(b)(3):  (1) that § 522(b)(3) is written in the conjunctive such that Congress intended for a debtor to be able to exempt property under all three subsections of § 522(b)(3); and (2) a debtor's ability under § 522(b)(3) to exempt property listed in § 522(d) depends upon the effect of the "domiciliary

6

requirement under subparagraph (A)" and is silent with respect to a debtor's ability to do so when exemptions are otherwise available under § 522(b)(3)(B) and (C). The court thus finds that although Congress placed the concluding sentence of § 522(b)(3) after § 522(b)(3)(C), its explicit reference to, and modification of, § 522(b)(3)(A) does not conclusively determine when Congress intended it to be effective. Thus, a plain meaning interpretation of the concluding sentence of § 522(b)(3) is not possible.

"Where statutory language is ambiguous, we 'turn to other evidence to interpret the meaning of the provision,' interpreting provisions harmoniously, where possible, or by reference to the legislative history, and always with the goal of ascertaining congressional intent." *Johnson v. Zimmer*, 686 F.3d 224, 235 (4th Cir. 2012) (internal quotations and citations omitted); *U.S. v. Noland (In re First Truck Lines, Inc.)*, 48 F. 3d 210, 213-14 (6th Cir. 1995), *rev'd on other grounds*, 517 U.S. 535 (1996) (holding that where a plain meaning is ambiguous, the court turns to legislative history to determine Congressional intent). Notably, "[p]re–BAPCPA bankruptcy practice is telling because we 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'" *Hamilton v. Lanning*, 560 U.S. 505, 518 (2010) (citations omitted). Moreover, to aid in statutory interpretation, a court may consider the underlying policy of the statute. *U.S. v. Yellin* (*In re Weinstein*), 272 F.3d 39, 46 (1st Cir. 2001).

Before Congress amended the Bankruptcy Code by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), § 522(b)(2) permitted a debtor to claim the following property as exempt:

> (A) any property that is exempt under Federal law, other than subsection (2) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and
>
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety . . . to the extent that such interest . . . is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2) (2004). It is evident from the former § 522(b)(2) that a debtor who exempted property thereunder was able to claim an exemption in property based on state law where the debtor was domiciled for exemption purposes and additionally an exemption in property held as a tenancy by the entirety, to the extent allowed under state law. The Senate Report accompanying the enactment of § 522(b) of the Bankruptcy Code as it appeared in 1978 elucidates that notion.

> Subsection (b) . . . permits an individual debtor in a bankruptcy case . . . [to] choose the Federal exemptions prescribed in subsection (d), or he may choose the exemptions to which he is entitled under other Federal law and the law of the State of his domicile . . . . He may also exempt an interest in property in which the debtor had an interest as a tenant by the entirety . . . to the extent that interest would have been exempt from process under applicable nonbankruptcy law.

S. Rep No. 989, 95th Cong, 2d Sess. 75–76 (1978) (emphasis added). The Senate Report indicates that the exemptions provided by state law are distinct from an exemption in property held as a tenancy by the entirety; that is to say, property held as a tenancy by the entirety could be claimed in addition to a state exemption scheme, not instead of it. Indeed, the Senate Report suggests that Congress did not intend for the availability of a tenancy-by-the-entirety exemption to be dependent upon the availability of state law exemptions applicable to the debtor. Moreover, an exemption under § 522(b)(3)(B) (formerly § 522(b)(2)(B)) is governed by the law where the property is located, which is distinguishable from the law of the debtor's domicile. *Holland v. Safanda (In re Holland)*, 366 B.R. 825, 830 (N.D. Ill. 2007) (holding that "applicable nonbankruptcy law" in 11 U.S.C. § 522(b)(3)(B) refers to the law of the situs of the property). In other words, the availability of the tenancy by the entirety exemption was governed by the situs of the property wherever located; it is not limited by the debtor's residence on the petition date or by the debtor's domicile as determined by § 522(b)(3)(A).

Subsequent amendments, including BAPCPA, did not alter the existing relationship between the two subparagraphs. "Congress determined to leave wholly intact the preexisting blanket exemption available to debtors who own property in a tenancy by the entireties form . . . ." *In re Schwarz*, 362 B.R. 532, 539 n.2 (Bankr. S.D. Fla. 2007). The exemption for property held as a tenancy by the entirety is available to all debtors claiming exemptions under §

522(b)(3) to the extent that it is recognized under state law where the property is located. Similarly, Congress did not amend a debtor's right, if electing exemptions under state law, to claim additional exemptions under federal nonbankruptcy law in other property, such as veterans benefits under 45 U.S.C. § 352(E) and social security payments under 42 U.S.C. § 407. In fact, Congress expanded the scope of exemptible property under § 522(b)(3) by adding subparagraph (C), which authorizes a debtor claiming exemptions under § 522(b)(3) to exempt certain retirement accounts specified therein.

By BAPCPA, Congress simply added language in § 522(b)(3) to curb a perceived abuse of debtors who move from one state to another in contemplation of bankruptcy to take advantage of a more generous exemption scheme. *In re Chandler*, 362 B.R. 723, 729 (Bankr. N.D.W. Va. 2007) (citing *Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256*, H.R. Rep. No. 109-31, Pt. 1, p. 15-16, 109th Cong., 1st Sess. (2005)). Under the section redesignated as § 522(b)(3)(A), Congress extended the 180–day domicile requirement to 730 days. The extended period may create a situation, as has arisen in this case, where a debtor who is domiciled in an opt-out state, cannot elect the federal exemptions, and cannot elect the state law exemptions as a nonresident. Thus, based upon the court's analysis of the pre-BAPCPA operation of § 522(b)(3) and the purpose for its revision under BAPCPA, the court finds it fair to determine that Congress added the concluding sentence of § 522(b)(3) to permit a peripatetic debtor domiciled in an opt-out state to claim exemptions in property listed in § 522(d) if the application of the domiciliary provisions of § 522(b)(3)(A) renders a debtor ineligible to claim exemptions provided by his domicile.

In summary, the court finds that the legislative history and intent behind § 522(b)(3), and particularly the concluding sentence thereof, makes clear that "ineligible for any exemption" means "ineligible for [any single] exemption [under subparagraph (A)]." This interpretation is supported by the notion that debtors could historically claim as exempt both property according to the exemption scheme of their domicile and property held as a tenancy by the entirety, which may be located outside their domicile; the fact that Congress did not change the relationship between what is now § 522(b)(3)(A) and (B), and, in fact, expanded the scope of exemptible property under § 522(b)(3) by adding subparagraph (C); and the express reference to §

9

522(b)(3)(A) in the concluding sentence of § 522(b)(3), whose operation is premised upon the effect of a domiciliary analysis; an analysis which is not linked at all to the application of subparagraphs (B) or (C).

Ms. Capelli's interpretation of the concluding sentence of § 522(b)(3) leads to results which are inconsistent with its language and purpose. To reiterate, the triggering feature of the concluding sentence is the failure of "any exemption" based upon a domiciliary requirement. As demonstrated, neither subparagraphs (B) or (C) are domicile dependent and thus cannot fail based upon the effect of a domiciliary requirement under subparagraph (A). Therefore, the term "any exemption" must relate to the failure of any exemption under subparagraph (A) only. Moreover, Ms. Capelli's interpretation would frustrate the purpose of the concluding sentence of § 522(b)(3) which, by preserving an exemption scheme to debtors under § 522(d), in turn promotes the Bankruptcy Code's concept of a fresh start. For instance, consistent with Ms. Capelli's view, in addition to the unavailability of exemptions under subparagraph (A), a debtor must also lack resort to any exemptions under subparagraph (B) and (C) before he or she could invoke the exemptions provided by § 522(d). That would mean that a debtor with a minimal amount, for instance no more than $500.00, in a qualifying retirement account under subparagraph (C) would be unable to exempt property listed in § 522(d). Such a debtor would thus be distinctly disadvantaged and his or her fresh start at jeopardy; a result demonstrably at odds with the fail-safe provisions provided by Congress in the concluding sentence of § 522(b)(3).

### III. CONCLUSION

Based on the court's statutory interpretation of the statute, it will deny Ms. Capelli's Objection to Exemptions. The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021 in conjunction with this opinion.